UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIM FLAHERTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 11-11156-TSH |
| MICHAEL J. ASTRUE, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER AFFIRMING THE COMMISSIONER'S DECISION**
September 3, 2013

HILLMAN, District Judge.

Kim Flaherty ("Flaherty") brings this appeal against Michael J. Astrue, Commissioner of the Social Security Administration (the "Commissioner"), for judicial review of the decision affirming the Administrative Law Judge's ("ALJ") denial of Flaherty's application for Social Security Disability Insurance benefits ("SSDI"). Specifically, the ALJ ruled that Flaherty's impairments did not render her disabled under the meaning of the Social Security Act (the "Act"). 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A). On October 8, 2012, Flaherty filed a Motion to Reverse the Commissioner's decision arguing that her denial of SSDI was improper because the ALJ rendered impermissible lay medical opinion and provided an incomplete hypothetical question to the Vocational Expert at Step Five of the determination process. (Docket No. 11). On November 16, 2012, the Commissioner filed a Motion to Affirm on the grounds that the ALJ's conclusions were supported by substantial evidence. (Docket No. 15). This action is now ripe for

review under 42 U.S.C. § 405(g). For the following reasons, the Court hereby GRANTS the Commissioner's Motion to Affirm the ALJ's decision.

I. **Procedural History**

Flaherty first applied for SSDI on March 25, 2009 alleging that her disabling condition arose on January 1, 2008 as a result of complications from surgery and a prolapse of her pelvic floor.[1] (R. 9, 108-09, 135). On June 10, 2009, the Social Security Administration ("SSA") denied Flaherty's application finding that her impairments did not deter her from regularly performing her usual daily activities. (R. 42-44). On July 13, 2009, Flaherty requested reconsideration. (R. 47). On November 18, 2009, the SSA found that although Flaherty suffered from certain conditions, they were not severe enough to prevent her from working. (R. 49-51). Flaherty then sought a formal hearing before an ALJ. (R. 52-53). On January 4, 2011, a hearing was held before ALJ Addison C.S. Masengill. (R. 18-39). During that hearing, the ALJ solicited testimony from a Vocational Expert ("VE"). (R. 36-38). On January 21, 2011, the ALJ issued his decision denying Flaherty's claim. (R. 6-17). After the ALJ's denial, on April 27, 2011, the Decision Review Board ("DRB") selected Flaherty's case for further consideration and affirmed the ALJ's determination as final under 20 C.F.R. § 405.420(b)(1).[2] (R. 1-4). After exhausting all available administrative remedies, Flaherty filed a civil Complaint on June 29, 2011 (Docket No. 1).

II. **Facts**

---

[1] A copy of the Administrative Record (hereinafter "R.") has been provided to the Court under seal (Docket No. 9).

[2] The DRB's Notice of Decision stated:
> [T]he ALJ accounted for your anxiety condition by including functional limitations that limit you to unskilled tasks in the RFC and the vocational expert identified jobs that limit you to unskilled work. Despite your challenges relating to your impairments, the evidence indicates that you are highly motivated (Exhibit 12F, p. 3), which is a counter-indication to a finding of a disabling mental impairment. Notably, the report from your therapist is dated in December 2010, and the supporting treatment notes, all post-date the Date Last Insured of December 31, 2009 (*See* Exhibit 12F).

(R. 1-2).

2

### A.      Flaherty's Personal and Employment History

Flaherty is a 41 year-old resident of Shrewsbury, Massachusetts. (R. 108). She is a high school graduate. (R. 140). Her previous work experience includes working as a florist/floral designer which is classified as "skilled work" at a medium exertion level.[3] (R. 136). Flaherty has remained unemployed since December 30, 2007. (R. 135).

### B.      Flaherty's Physical Impairments

In 2007, Dr. Susan Moran, a primary care physician, treated Flaherty for urogynecologic problems and later referred her to the Urology Department at UMass Memorial Medical Center ("UMMC") under the direction of Dr. Stephen Young. (R. 270). Dr. Young ultimately diagnosed Flaherty with stress-related urinary incontinence. (R. 268). After Dr. Young performed a multi-channel urodynamic evaluation on September 10, 2007, he recommended surgery. (R. 266).

Flaherty alleges that her disabling condition commenced on or about January 1, 2008. (R. 108). On January 2, 2008, Dr. Young performed several surgical procedures on Flaherty including: a total vaginal hysterectomy, exploratory laparotomy, abdominal high uterosacral suspension, abdominal transverse defect repair, tension free vaginal tape through the obturator foramen, perineorraphy, and intraoperative cystoscopy. (R. 240). Flaherty suffered complications during surgery, specifically, intraoperative hemorrhaging. (*Id.*). Her condition upon discharge, however, was "excellent" and she "recovered overall very well" and had an "excellent" prognosis. (*Id.*). Dr. Young examined Flaherty during a postoperative visit six weeks later and

---

[3] The SSA separates work into five categories by order of magnitude with respect to the physical exertion required for a given occupation: sedentary work, light work, medium work, heavy work, and very heavy work. 20 C.F.R. § 404.1567. Medium work is defined by "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* § 404.1567(c). Heavy work is defined by "lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." *Id.* § 404.1567(d). Workers are considered able to perform any type of work that is lower in physical exertion magnitude than what their current occupation requires, e.g., someone performing heavy work is able to perform medium, light, or sedentary work. *Id.*

noted that she "will return to work with a limited function where she will not lift heavy objects for another 2-3 months." (R. 289).

Flaherty had postoperative issues including urinary retention and nerve damage in her pelvic region. (R. 258, 275, 369). Several doctors and therapists, however, reported that her recovery was improving. By March 3, 2008, Flaherty had made "outstanding gains in pain management" during treatment sessions at South County Physical Therapy ("SCPT"). (R. 196). On April 28, 2008, Flaherty said "I feel great." (R. 195). During visits to SCPT on May 8, 2008 and May 12, 2008, Physical Therapist Stacey Berger noted that Flaherty "felt a lot better" and was able to void properly. (R. 194).

On May 6, 2008, Dr. Moran noted that Flaherty's neurological symptoms (i.e., cranial, sensory, motor and coordination) and her psychiatric symptoms (i.e., judgment, orientation, memory and mood) were normal. (R. 225). On May 16, 2008, Dr. Young examined Flaherty and found that she was not in any kind of distress, that her abdomen was soft and nontender, and that physical therapy had helped her recovery. (R. 260). On November 11, 2008, Stacey Berger noted that although Flaherty considered her voiding ability not "fully normal," she was nevertheless "doing a lot better" and her overall pain scale was 3 out of 10 (on a scale of 1-10, 10 being the most pain). (R. 210).

On February 03, 2009, Urogynecologist Dr. Neeraj Kohli noted that Flaherty had bouts of urinary retention with flares of pelvic tightness and pain from prolonged sitting. (R. 218). However, Dr. Kohli felt that Flaherty's symptoms had improved due to extensive physical therapy at SCPT and also noted that her neurologic and psychiatric systems were "normal." (*Id.*). On June 3, 2009, Urologist Dr. Paula Bellin from UMMC reported that Flaherty was still

affected by episodes of bladder spasms and other neurologic symptoms related to nerve damage from surgery. (R. 372).

On November 11, 2009, the SSA's non-examining physician, Dr. Malin Weeratne, reviewed Flaherty's medical records and performed a physical RFC assessment. (R. 373-80). Dr. Weeratne found that Flaherty could frequently lift ten pounds, occasionally lift twenty pounds, sit, stand, and walk for six hours in an eight-hour workday, and would have no postural limitations with respect to climbing ramps or stairs, balancing, stooping, kneeling, crouching or crawling.[4] (R. 374-75). Dr. Weeratne based her conclusions by finding that Flaherty was independent, did not use assistive devices, completed activities of daily living like light chores and driving her children, and had steadily improving symptoms due in large part to physical therapy, acupuncture and a medication regimen of Flomax and Ditropan. (R. 375). Flaherty also rehabilitated with yoga, water fitness, zumba classes, aquatic therapy, treadmill work, stretching and hypnotherapy. (R. 28, 311, 381, 384).

### C. Flaherty's Mental Impairments

In addition to her physical impairments, Flaherty contends she had several mental impairments. For example, on May 18, 2007, Dr. Young noted that besides her bladder issues, Flaherty stated that she "can be very emotional and weepy" and that she does not remember and concentrate like she used to. (R. 270). Following surgery, Flaherty underwent four separate therapy sessions at Acupuncture Wellness Center ("AWC") on April 7, 2009, April 28, 2009, May 28, 2009, and June 10, 2009. (R. 309). AWC's Licensed Acupuncturist, Annmarie Iverson, noted that Flaherty had revealed that she had anxiety for the past four to five years and that the uncertain nature related to her recovery process also "bring[s] on anxieties." (R. 307-08). Prior to treatment, however, Flaherty personally completed a patient history form where she circled "no"

---

[4] Dr. Weeratne noted that Flaherty could only "occasionally" climb ladders, ropes or scaffolds. (R. 375).

for symptoms of "depression, anxiety, mental/emotional illness" and circled "average" for her current level of stress.[5] (R. 310-11). After treatment on April 7, 2009, Flaherty noted her pain level at 4 out of 10. (R. 316).

Between January 12, 2010 and December 29, 2010, Flaherty met with Cynthia Horan, a licensed independent clinical social worker, for fourteen therapy sessions. (R. 382-86). A December 29, 2010 letter from Horan to Flaherty's counsel refers to a Mental Impairment Questionnaire which Flaherty personally completed where she stated that her pain levels were between 7 or 8 out of 10. (R. 382). Horan opined that she had been a therapist for over two decades and found that Flaherty was not a typical "malingerer" seeking a favorable diagnosis which would subvert the "system." (*Id.*). Horan determined that Flaherty had concentration issues, memory loss, and adjustment disorder with mixed anxiety and depressed mood. (R. 384-85). Horan's letter concludes that Flaherty's difficulties with poor memory have "compromised [her] . . . to the point where she cannot resume her life to pre-surgery status due to her poor memory . . . I think it unlikely she will ever be able to be gainfully employed." (R. 383-84).

On December 20, 2010, Dr. Moran drafted a report in preparation for Flaherty's disability hearing before the ALJ. (R. 387). While this report was specifically designated as a "Medical Opinion Re: Ability to do Work-related Activities," i.e. an assessment of Flaherty's physical RFC, Dr. Moran noted that "[i]n addition to her physical issues[,] the patient has developed anxiety issues due to the trauma of the above condition and the chronicity of the symptoms necessitating major lifestyle issues for this young wife and mother." (R. 390). At the January 4, 2011 disability hearing, Flaherty testified that she had been diagnosed with mild depression and posttraumatic stress disorder ("PTSD"). (R. 27).

---

[5] On that same form she noted that she had poor memory. (R. 313).

### D.     The ALJ's Findings

In evaluating the Record, the ALJ made the following findings of fact and conclusions of law after following the five-step procedure set forth in 20 C.F.R. § 404.1520(a)(4).

At Step One, the ALJ found that Flaherty had not engaged in substantial gainful activity ("SGA") from January 1, 2008 through her date last insured on December 31, 2009. (R. 11).

At Step Two, the ALJ found that Flaherty's history of pelvic surgery with subsequent neurogenic bladder disorder were severe impairments. (*Id.*).

At Step Three, however, the ALJ also found that through the date last insured, Flaherty did not have an impairment or combination of impairments that met or medically equaled the criteria listed under Appendix 1 of 20 C.F.R. Part 404, Subpart P (20 C.F.R. § 404.1520(d), 404.1525 and 404.1526).[6] (R. 11-12).

At Step Four, the ALJ found that Flaherty's residual functional capacity ("RFC") allowed her to perform a reduced range of light work as defined in 20 C.F.R. § 404.1567(b). (R. 12). The ALJ found that Flaherty should avoid heights and cannot climb ladders, ropes, or scaffolds. (*Id.*) Moreover, Flaherty must have the option to sit or stand at will and that she would be restricted from any type of overhead lifting or reaching and must be limited to simple, unskilled tasks. (*Id.*).

---

[6] With respect to mental impairments, the ALJ noted in relevant part:
> [Flaherty's alleged] mental impairment must result in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. In activities of daily living, [Flaherty] had mild restriction. In social functioning, [Flaherty] had mild difficulties. With regard to concentration, persistence or pace, [Flaherty] had moderate difficulties. As for episodes of decompensation, [Flaherty] had experienced no episodes of decompensation, which have been of extended duration. Because [Flaherty's] mental impairment did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria were not satisfied.

(R. 11-12).

At Step Five, the ALJ the found that through Flaherty's date last insured, given her RFC, age, education, and work experience, there were jobs that existed in significant numbers in the national economy that she could perform. (R. 16). The ALJ ultimately found Flaherty not under a disability as defined by the Act (20 C.F.R. § 404.1520(g)). (R. 17).

## III. Discussion

Flaherty argues that the Commissioner's decision should be reversed or remanded because the ALJ's decision was not supported by substantial evidence. Specifically, Flaherty contends that: 1) the ALJ rendered impermissible lay medical opinion when he failed to consider the limiting effects of Flaherty's alleged anxiety, depression, memory and concentration issues noted by her treating sources; and 2) the ALJ further compounded this mistake by providing an incomplete hypothetical question to the VE during Step Five of the disability hearing. Conversely, the Commissioner asserts that the ALJ's decision should be affirmed because it was supported by substantial evidence and that it was Flaherty's burden to develop the Record with evidence demonstrating that her mental conditions were medically determinable impairments as defined under the Act.

### A. Burdens of Proof

Throughout the disability determination process, the claimant maintains the burden of persuasion and the burden of production from Step One through Step Four. 20 C.F.R. § 404.1512(a); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [ALJ] may require."); *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001). The claimant must present objective medical evidence demonstrating their impairment. 20 C.F.R. §§ 404.1508, 404.1512. At Step Five, the burden shifts from the claimant to the Commissioner to

show that the claimant is capable of performing some occupation existing within the "national economy" which includes any work "in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). When making the Step Five determination, the ALJ must assess the claimant's RFC in combination with vocational factors, including the claimant's age, education, and prior work experience. 20 C.F.R. § 404.1560(c). It is squarely within the province of the ALJ to make factual and credibility determinations. *See Teixeira*, 755 F. Supp. 2d at 347 (noting that an ALJ's "credibility determination—based on observations of the claimant, evaluation of her demeanor, and consideration of how her testimony fits in with the record evidence—is entitled to deference, especially when supported by specific findings").

### B.  Standard of Review

After reviewing the pleadings and the Record, this Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for rehearing. 42 U.S.C. § 405(g). During the administrative process, the ALJ is required to "deploy[] the correct legal standards and [find] facts upon the proper quantum of evidence." *Roman-Roman v. Comm'r of Soc. Sec.*, 114 F. App'x 410, 411 (1st Cir. 2004). The Commissioner's decision shall be affirmed if the ALJ's ultimate determination was supported by "substantial evidence" which courts have defined as "more than a mere scintilla," *Currier v. Sec'y of Health, Ed. & Welfare*, 612 F.2d 594, 597 (1st Cir. 1980), and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sansone v United States R.R. Ret. Bd.*, 159 F. App'x 210, 211 (1st Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 399, 91 S. Ct. 1420 (1971)).

In applying the "substantial evidence" standard, the court must recognize that it is within the province of the ALJ, not the court, to find facts, decide issues of credibility, draw inferences

from the record, and resolve conflicts in the evidence. *See Ortiz v. Sec'y of Health & Human Servs.*, 114 F. App'x 410, 411 (1st Cir. 2004). This means that "even if the record arguably could justify a different conclusion," the ALJ's determination will still stand. *Rodriguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987). Reversing an ALJ's decision is warranted in cases where the ALJ misapplied relevant law, ignored material evidence, or made evidentiary conclusions that are left within the purview of an expert witness. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). Finally, the Court must "review[] the evidence in the record as a whole" to decide whether the substantial evidence standard was correctly applied. *See Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991).

### C.     Standard for SSDI Entitlement

In order to qualify for SSDI, claimants must demonstrate that they are disabled under the Act. The Act defines "disability" as having the "inability to engage in any SGA by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant's impairments must be so severe as to prevent them from performing not only past relevant work, but any substantially gainful work that currently exists in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1). Another requirement for receiving SSDI is that the claimant must prove they were disabled prior to their date last insured for eligibility under the Act. 42 U.S.C. § 423(a)(1)(A); *Kemp v. Astrue*, No. 10-40140-TSH, 2012 WL 1085518, at *5 (D. Mass. Mar. 29, 2012) (citing *Brunson v. Astrue*, 387 F. App'x 459, 460 (5th Cir. 2010)).

The appropriate rubric for determining a claimant's disability level is a five-step test under 20 C.F.R. § 404.1520. During an administrative hearing, the ALJ must follow each of

these steps sequentially. 20 C.F.R. § 404.1520(a)(4). If at any step the ALJ determines that the claimant is either disabled or not disabled, the investigation immediately terminates. *Id.* If, however, the ALJ is unable to conclusively determine whether a claimant is or is not disabled, the evaluation continues on to the next step in the sequence. *Id.* The process that the ALJ must consider is further summarized as follows:

> [Step One] If claimant is doing SGA, he is not disabled.
>
> [Step Two] If claimant is not doing SGA, his impairment must be severe before he can be found to be disabled.
>
> [Step Three] If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> [Step Four] If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> [Step Five] Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### D. Lay Medical Opinion

Flaherty argues that the ALJ committed reversible error by relying on his own lay medical opinion when rendering her disability decision. Specifically, Flaherty contends that her mental health diagnoses were apparent at the time of the hearing and that the ALJ should have either remanded the action back to the state agency for further review or solicited testimony from a qualified medical expert as to the severity of her anxiety, depression, memory and concentration symptoms. While compelling, these arguments are unpersuasive because the ALJ's determination was supported by substantial evidence throughout the Record. *See* 20 C.F.R. §

416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Flaherty directs the Court to four primary areas in the Record to support her contention that she has a medically determinable mental impairment. First, Flaherty argues that her statements to the ALJ during the disability hearing, where she testified that she was "diagnosed" with PTSD and mild depression, constitute objective medical evidence of her mental impairments. (R. 27). Second, Flaherty cites progress notes taken by her acupuncture therapist which reflect Flaherty's belief that "the uncertainties [of the recovery process] bring on anxiety." (R. 308). Flaherty also cites the "patient history form" that she completed prior to those acupuncture sessions where she placed a check mark next to "poor memory." (R. 313). Third, Flaherty relies on the conclusions of a licensed social worker who determined that she had concentration and memory issues, adjustment disorder with mixed anxiety and depressed mood. (R. 384-85). Fourth, Flaherty points to the notes on her physical RFC report, created by her primary care physician, stating that she had developed "anxiety issues." (R. 390).

Like any claimant applying for SSDI, Flaherty must prove that her disabling condition occurred prior to her date last insured. *See Vazquez Vargas v. Sec'y of Health & Human Servs.*, 838 F.2d 6, 8 (1st Cir. 1988); *Cruz Rivera v. Sec'y of Health & Human Servs.*, 808 F.2d 96, 97 (1st Cir. 1986). Flaherty's date last insured was December 31, 2009. (R. 11). Thus, of the above-cited references to the Record, only the intake form completed by Flaherty and the progress notes from April 28, 2009 to June 10, 2009, taken by her acupuncturist, were actually completed prior to this date expiring. Furthermore, even though these therapy notes fall within the relevant time frame in which Flaherty must prove her disability, the ALJ chose to give them little evidentiary weight. "[I]mpairment[s] must result from anatomical, physiological, or psychological

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. Moreover, a "*mental impairment* must be established by medical evidence consisting of signs, symptoms, and laboratory findings, *not only* by your statement of symptoms." *Id.* (emphasis added). While the acupuncture patient history form that Flaherty personally filled out contains a check mark next to "poor memory," nothing in this form could be considered a medically acceptable clinical or laboratory diagnostic technique because it simply reflects Flaherty's own opinion of her condition. Flaherty's assertion of having a mental impairment is further belied by the fact that she circled "no" on that same form for "depression, anxiety, mental/emotional illness." (R. 310). Moreover, nothing in the acupuncturist's progress notes from four total meetings, which revealed that she spoke with Flaherty "about relaxation response, etal [sic] to help with the process/journey of this . . . the uncertainties bring on *anxiety*," could be considered a sign, symptom or laboratory finding of Flaherty's alleged diagnoses. (R. 308).

Flaherty's remaining evidence is at best retrospective because it was recorded nearly one year after her date last insured. *See Tremblay v. Sec'y of Health & Human Servs.*, 676 F.2d 11, 13 (1st Cir. 1982) (noting that even if a claimant asserts a serious medical condition that occurs *after* their date last insured, the ALJ has no responsibility of taking that into consideration for the purposes of the final disability determination). The three pages of treatment notes taken by a social worker and the letter from her primary care physician to her attorney were all completed during 2010 and do not contain any mental status examination findings nor anything else that could be considered evidence of signs, symptoms or laboratory findings of the mental impairments that Flaherty alleges. (R. 384-86, 390). Her primary care physician treated her for several years but there is simply no evidence in the Record of any mental health determination

prior to December 10, 2010. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 274 (1st Cir. 1988) (noting that it is within the ALJ's discretion to give more credibility to findings of the state agency's physician rather than a claimant's treating physician). Furthermore, Flaherty's hearing testimony before the ALJ, like the patient history form she completed prior to acupuncture therapy, was clearly self-serving and does not constitute adequate evidence of a medically determinable impairment. 20 C.F.R. § 404.1508. For example, at that same hearing, Flaherty claimed she was diagnosed with PTSD, but nothing in the Record corroborates that assertion in any way.

Flaherty also incorrectly interprets the burdens of proof during the administrative process. She contends that the ALJ should have solicited testimony from a medical expert to determine the severity of her alleged mental health impairments. While she was represented by capable counsel during the hearing, Flaherty carried "the burden of production *and proof* at the first four steps of the process." *Freeman*, 274 F.3d 606, 608 (1st Cir. 2001) (emphasis added); 20 C.F.R. § 404.1512(a) ("[Y]ou must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are disabled, its effect on your ability to work on a sustained basis."). While the ALJ is responsible for developing the Record, he is not responsible for creating evidence. 20 C.F.R. § 404.1512(c) ("You [the claimant] must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled."); *Jones v. Bowen*, 699 F. Supp. 693, 697 n.8 (N.D. Ill. 1988) ("What the ALJ is obligated to do is to *develop* the record, not to *create* it."). Moreover, nothing in the Act requires the ALJ to solicit testimony from a medical expert on behalf of a claimant. *See Rodriguez Pagan*, 819 F.2d at 5.

Accordingly, for the reasons set forth above, the ALJ did not render lay medical opinion, but, rather, supported his findings with substantial evidence.

### E. Hypothetical Question

At bottom, Flaherty contends that the ALJ created reversible error at Step Five by presenting the VE with an incomplete hypothetical derived from his own lay medical opinion with respect to the severity of her anxiety, depression, memory and concentration issues. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). As discussed above in Section D this Part, the ALJ's final determination was based on substantial evidence. Flaherty failed to objectively demonstrate that her impairments existed prior to her date last insured. Thus, the ALJ's hypothetical questions were proper because they accurately reflected reasonable conclusions drawn from the evidence in the Record. *See Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) ("[I]n order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities."). Accordingly, the ALJ's hypothetical questions presented to the VE at Step Five were supported by substantial evidence.

## IV. Conclusion

For the foregoing reasons, I find that the ALJ analyzed the Record under the appropriate legal rubric and his conclusions were supported by substantial evidence set forth in the Record. Accordingly, Commissioner's Motion to Affirm the ALJ's Decision (Docket No. 15) is hereby GRANTED.

It is so ORDERED.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**